Hillsborough,
No. 5410.

## A. E. DIONNE, INC. *v.* GEORGE A. MASSON.

Submitted December 8, 1965.
Decided March 30, 1966.

*Clancy & O'Neill* for the plaintiff.

*Harkaway & Barry* for the defendant.

BLANDIN, J. The parties had a written contract, upon which the defendant's signature is admitted, and which provides: "Agreement made this 27 day of May 1963, by and between A. E. Dionne, Inc., ( hereinafter called the Contractor )and George A. Masson ( hereinafter called the Purchaser ).

1. The Contractor will drill, and case a drilled well, on the premises of the Purchaser at Mammoth Rd. Pelham, N. H.

2. The well shall be drilled at a point designated by the Purchaser, who represents that he has the right to place a well at such location, and who will indemnify and save harmless the contractor from any claims for damages or injury to property, lawns, trees, shrubberies.

3. The Contractor in no way or manner guarantees that the well will produce any minimum quantity of water, and will drill, at the Purchaser's expense, to any required depth within the normal limits of his equipment. The Purchaser agrees to pay for all drilling done on his property.

4. In consideration of the above the Purchaser agrees to pay the Contractor the following sums: ( a ) 6.00 per foot for drilling. ( b ) 2.00 per foot for casing. ( c ) A minimum of fifty ( 50 ) feet shall be drilled at the contract price. ( d ) The sum of

upon signing this agreement. (e) The balance of the contract price shall be due and payable upon completion of the work.

5. If the Purchaser shall default any payment due under the provisions of this agreement for a period of thirty (30) days, he authorizes and empowers the Contractor to go upon his premises, free of trespass, for the purpose of reclaiming and recovering any materials, including casing, installed in the well-hole.

6. The Purchaser, or his representative, shall have the right to see the well tested, at any time during the drilling operation, provided that the time required for these tests does not exceed twenty (20) minutes in any single working day.

The Contractor carries adequate Workmen's Compensation and Public Liability insurance in reputable companies. This agreement is subject to approval of the Purchaser by his credit references.

Signed in the presence of                    George A. Masson
                                                    Purchaser."

None of the plaintiff's bill, which amounted to $2,560, has been paid.

On the record, the Court could find the following facts:

The defendant designated the place on his property, located in Pelham, New Hampshire, where he wished the plaintiff to drill, in accordance with his right to do so under clause 2 of the contract. After the plaintiff's men had reached a depth of some 30 feet, they struck boulders which rolled under the pressure of the drill so that it was impossible to proceed further. They moved the machine some 6 feet without consulting the defendant and continued operations for five or six days until they reached a depth of approximately 410 feet. During this period the defendant was present every day. He made no objections because the drill had been moved, nor did he tell the drillers to stop or to leave his property. In fact, he agreed from day to day that the drilling should continue. He also visited the office of the plaintiff's company on an occasion and, in discussing the progress of the work with company officials, did not mention the alleged violation of clause 2.

At 410 feet, no water had been found. The defendant then told the plaintiff's president, Albert Dionne, that they were "wasting [their] time drilling any deeper" and that since they had moved the drilling machine without consulting him, he was going to use

clause 2 in the contract to avoid payment. He added, "I am looking for a way out." Shortly before this conversation, the defendant had found an ample supply of water from a hand-dug well "out back" on his property.

During the course of the trial, the defendant sought to introduce the testimony of Norman A. Granger, upon whose property in Brookline, New Hampshire, the plaintiff had done work subsequent to its undertaking on the defendant's land. The defendant characterized the proffered testimony in his offer of proof to the Court as "an admission against interest on the part of A. E. Dionne Co." He further stated: "I want to show by the testimony of this witness that there was a similar deal; that they struck water on his [Granger's] property; they continued going down further and one of the employees of the Dionne Company said 'We will get you' or something to that effect, 'the same as we got Masson in Pelham' . . . 'and you are going to have to pay.' . . . He added 'You can't stop us from going down. We will get you the same as we got Masson.'" To the Court's inquiry: "Who [said this]?" counsel replied, "One of the employees. I asked Mr. Dionne if he had a fellow named Chet, and he said he did have a fellow named Chet working for him."

The Court could find that "Chet" did not work for the plaintiff on the Masson job at all. It further did not appear that Chet was even employed by the plaintiff while operations on the defendant's property were going on or that he had any personal knowledge of what occurred there or any authority to bind the plaintiff company by his statements.

In this state of the evidence, we think we need not labor the point that the Court's exclusion of the proffered testimony is sustainable. *Semprini* v. *Railroad,* 87 N. H. 279, 280; *Hunkins* v. *Company,* 86 N. H. 356, 358; Restatement (Second), Agency, s. 288, *comment* c. Cf. *Sigel* v. *Boston & Maine R. R.,* 107 N. H. 8.

Aside from the fact that the issue was not raised at the trial (*Fitch Company* v. *Insurance Company,* 99 N. H. 1, 3), the defendant's further argument that the statement should have been admitted as part of the res gestae finds no support in the record.

The defendant concedes in his brief that absent Granger's testimony the Court could have found that since Masson stood by without protest and agreed that the plaintiff should continue to work after the drill was moved, he cannot now take advantage of

clause 2 of the contract. We believe this is correct. *Therrien* v. *Maryland Cas. Co.,* 97 N. H. 180; *National School Studios* v. *Mealey,* 211 Md. 116; Williston on Contracts (Jaeger 3d *ed.* ), ss. 637, *p.* 1036, 688, *p.* 303; Restatement, Contracts, *s.* 309. It follows that the Court's refusal to grant a nonsuit because of the plaintiff's alleged violation of clause 2 of the agreement was proper. The defendant's exception thereto is overruled.

This appears to dispose of all issues properly before us, and an examination of the record disclosing that the trial was free of error, the order is

*Judgment on the verdict.*

All concurred.